CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

MAYA KARWANDE (CABN 295554)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Maya.Karwande@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JUAN ISIDRO ORTIZ, <br><br> Defendant. | CASE NO. 5:24-CR-00257-EJD <br><br> **USA SENTENCING MEMORANDUM** <br><br> Date: August 26, 2025 <br> Time: 2:00 p.m. <br> Courtroom: 4 <br> Judge: Hon. Edward J. Davila |

## I. INTRODUCTION

On March 23, 2023, Juan Isidro Ortiz was charged by criminal complaint with one count of distribution of fentanyl in violation of 21 U.S.C. § 841(a)(1), (b)(1)(c). On May 3, 2024, a one count Information with the same charge was filed. Ortiz pleaded guilty pursuant to a Conviction Alternatives Program (CAP) plea agreement on May 6, 2024. Ortiz was referred to and accepted into the San Jose CAP program. Ortiz began the program on July 23, 2024, and is expected to complete the CAP program on August 26, 2025.

## II. THE CHARGED CONDUCT

Beginning in January 2023, Ortiz was the target of a Drug Enforcement Agency (DEA)

investigation into fentanyl-laced M30 pill distribution in Monterey County. Ortiz dealt distribution quantities of fentanyl-laced M30 pills to other smaller dealers. Fentanyl-laced M30 pills are counterfeit oxycodone pills – they are blue round pills with the with the number "30" imprinted on one side and the letter "M" imprinted on the other side. These pills are consistent with the shape, color, and markings of oxycodone hydrochloride pills dispensed in pharmacies. Counterfeit M30 pills in Monterey typically contain fentanyl and acetaminophen. A single fentanyl M30 pill can be deadly.

Ortiz generally arranged for fentanyl M30 pill transactions over Snapchat. Ortiz would deliver the fentanyl M30 pills in person, have the buyer pick them up from his house, or would leave the pills in public places (such as under a log) and send of video of the location to the buyer via Snapchat for pick up. PSR ¶ 19.

During the investigation, an undercover officer (UC) was introduced to Ortiz. Ortiz sold the UC large quantities of fentanyl M30 pills during two controlled purchases. On February 13, 2023, Ortiz sold the UC 800 fentanyl M30 pills in exchange for $800. PSR ¶¶ 12-15. On March 16, 2023, Ortiz sold the UC 1000 fentanyl M30 pills, known by drug dealers as a "boat," in exchange for $2,400. PSR ¶¶ 16-18. During the deal, the UC asked for an additional $600 worth of fentanyl M30 pills. Ortiz agreed, went to his house, and picked up an addition 250 fentanyl M30 pills. *Id.*

Based on DEA lab testing, the fentanyl M30 pills Ortiz sold contained an average of 3.6 milligrams of fentanyl per pill. PSR ¶¶ 15,18. Each of the pills that Ortiz sold was potentially deadly to the user. Just two milligrams of fentanyl can be lethal, depending on a person's body size, tolerance, and past usage.

On March 23, 2023, DEA executed a search of Ortiz's residence. PSR ¶ 20. Ortiz shared a room with his wife and 7-month-old baby. During the search of the room, DEA recovered a total of 1,200 fentanyl-laced M30 pills in a dresser, a mortar and pestle with fentanyl residue and 3 loose fentanyl M30 pills in the closet above the baby's diaper changing area, $2,835 cash, and a scale. The mortar and pestle are indicia of fentanyl use - users often will crush fentanyl pills and smoke the powder to achieve a more controlled (and safer) high, compared to ingestion. In addition, DEA recovered two firearms in Ortiz's bedroom: a Glock 23 .40 caliber firearm bearing Serial Number BYNN733 with a brown Balor weapon-mounted light attached loaded with IO rounds of .40 caliber ammunition,

including a bullet in the chamber, and a Savage Model 64 rifle, 22 caliber, L.R. only firearm bearing Serial Number 2027373 loaded with 6 rounds of .22 caliber ammunition, including one bullet in the chamber.

### III.   SENTENCING GUIDELINES CALCULATIONS

In the plea agreement, the parties agreed to the following Sentencing Guidelines calculation:

   a.   Base Offense Level, U.S.S.G. § 2D1.1(a)(5), (c)(10)                                28

   b.   Specific offense characteristics under U.S.S.G. Ch. 2D1.1(b)(1)            + 2
         (*Firearm Possessed*)

   c.   Acceptance of Responsibility:                                                              - 3
         If I meet the requirements of U.S.S.G. § 3E1.1, I may be entitled to
         a three level reduction for acceptance of responsibility, provided
         that I forthrightly admit my guilt, cooperate with the Court and the
         Probation Office in any presentence investigation ordered by the
         Court, and continue to manifest an acceptance of responsibility
         through and including the time of sentencing.

   d.   Adjustments under U.S.S.G. Ch. 4 (*e.g.*, zero-point offender)              -2

   e.   Adjusted Offense Level:                                                                      25

In the PSR, it is noted that Probation believes that the USSG §4C1.1 reduction for being a zero-point offender does not apply because Ortiz possessed a firearm in connection with the offense. The government submits that although the enhancement under 2D1.1(b)(1) applies because Ortiz did possess a firearm in his bedroom along with the fentanyl pills, the possession was not "in connection with the offense," as required by § 4C1.1(7). If the Court adopts Probation's recommendation, it does not impact the government's sentencing recommendation.

The parties also agreed to an expanded search condition as a condition of supervised release.

### IV.   SENTENCING RECOMMENDATION

   A.   **Legal Standard**

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin by calculating the correct sentencing range under the Sentencing Guidelines. *Id.* The Guidelines are "the 'starting point and the initial benchmark,'"

*United States v. Ellis*, 641 F.3d 411, 415 (9th Cir. 2011) (quoting *United States v. Kimbrough*, 552 U.S. 85, 108 (2007)), and the Court should "remain cognizant of them throughout the sentencing process." *United States v. Gall*, 552 U.S. 38, 50 n.6 (2007).  After determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a).  *Carty*, 520 F.3d at 991-93.  Here, the most important considerations are the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to afford adequate deterrence.  18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(6).

### B.   Successful Completion of the San Jose CAP program

Ortiz's criminal conduct is very serious.  Fentanyl pills are deadly, and by using and selling the pills, Ortiz was risking not only the life of the users that were dealt his pills, but the life of the little baby that shared a room with him.

After his arrest, Ortiz was released to residential treatment at the Pillars Recovery detox and treatment program in Costa Mesa, California.  In July 2023, Ortiz relapsed after being released from that detox center.  Although it was a set-back, since then Ortiz has been testing negative.  After getting back on track and establishing stability, Ortiz was assessed for pretrial services for CAP and determined to meet the requirements.

In part because Ortiz's criminal conduct appeared be driven largely by his fentanyl addiction, he is young, and he has no criminal history, the government agreed to recommend him for participation in CAP.  Ortiz entered the CAP program in July 2024.

Ortiz has done well in CAP. Ortiz completed the rigorous program requirements on time and with few if any setbacks in the program.  Ortiz has set himself up for a path in life that does not involve criminal conduct.  Members of the San Jose CAP team report that while Ortiz started out reserved, by the end of the CAP program he had come out of his shell, fully engaged in attending college, participating in CAP, and being a dedicated caretaker at home to his (now two) young children.

//

//

//

Given Ortiz's successful completion of the CAP program, and pursuant to the terms of the CAP plea agreement, the government concurs in Probation's recommendation that Ortiz be sentenced to time-served, followed by a three-year term of supervised release, the mandatory $100 special assessment, the expanded search condition, and forfeiture of the cash and firearms recovered from his residence.

DATED: August 19, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

  /s/ Maya Karwande
MAYA KARWANDE
Assistant United States Attorney